IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE PETERS, | ) | |
| | ) | No. 21 C 336 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | JURY DEMAND |
| | ) | |
| MUNDELEIN CONSOLIDATED HIGH | ) | |
| SCHOOL DISTRICT NO. 120, | ) | |
| SHANE MCCREERY, | ) | |
| SARAH DAVIS, and | ) | |
| WENDY INMAN, | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT**

Plaintiff Michelle Peters (Plaintiff), through her attorneys, respectfully submits her Amended Complaint against defendants Mundelein Consolidated High School District No. 120 ("MHS"), Shane McCreery, Sarah Davis and Wendy Inman.

**Parties, Jurisdiction, and Venue**

1.  Plaintiff works for MHS in this judicial district.

2.  MHS is a comprehensive, one-building school district housing grades 9-12. MHS serves the needs of approximately 2,000 students from Mundelein and surrounding communities.

3.  MHS operated and did business within the venue and jurisdiction of this district.

4.  MHS employs over 100 people.

1

5. During the relevant time period, MHS employed Plaintiff as a Special Education Teacher.

6. Defendant Shane McCreery (McCreery) was hired as MHS's Director of Human Resources in about August 2018. During the 2019-2020 school year, McCreery became the Chief of Staff for MHS.

7. During the relevant time period, McCreery had final policy making authority and/or was delegated with final policy making authority for MHS.

8. During the relevant time period, Sarah Davis (Davis) worked for MHS as a Special Education Teacher.

9. At all relevant times, Davis acted within the scope of her employment and at the direction of MHS and its officials.

10. During the relevant time period, Wendy Inman (Inman) worked for MHS as a Special Education Teacher.

11. At all relevant times, Inman acted within the scope of her employment and at the direction of MHS and its officials.

12. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343.

13. Plaintiff filed this action after the timely filing of a Charge of Discrimination with the Equal Employment Opportunity Commission, a copy of which is attached as Exhibit 1 and incorporated by reference.

14. Plaintiff filed this action pursuant to the Right to Sue Letter issued by the Equal Employment Opportunity Commission within the statutory time requirement, a copy of which is attached as Exhibit 2 and incorporated by reference.

15. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Plaintiff's claim arises out of incidents which occurred in this judicial district.

## Facts Applicable to All Claims

16. In 2001, MHS hired Plaintiff.

17. Most recently, Plaintiff was employed by MHS as a Special Education Teacher working with children with a variety of disabilities.

18. During the relevant time period, Plaintiff met or exceeded MHS's legitimate employment expectations.

19. During the relevant time period, Plaintiff's supervisors included Kevin Meyers (Meyers) who worked for MHS as the Superintendent; Anthony Kroll (Kroll) who worked for MHS as the Principal; Kim Goldberg (Goldberg) who worked for MHS as the Department Chair of Special Education and Director of Special Education; Jaime DiCarlo (DiCarlo) who worked for MHS as the Assistant Superintendent of Student Services.

20. During the relevant time period, medical professionals diagnosed Plaintiff as having serious physical impairments that substantially limited one or more of her major life activities including, but not limited to, concentrating, thinking, communicating, breathing and working.

21. For example, Plaintiff was diagnosed as having acute and chronic asthmatic bronchitis which can be triggered by respiratory infections and exposure to certain environmental factors identified by her physicians.

22. Plaintiff was also diagnosed as having irritable bowel syndrome (IBS).

23. Plaintiff was also diagnosed as having glaucoma vision impairment.

24. Despite her serious physical impairments, Plaintiff is able to perform the essential functions of her position as a Special Education Teacher.

25. For example, Plaintiff is able to perform the tasks identified in the job description for her position, attached as Ex. 3.

26. However, due to the nature of her physical impairments, in order to work as a Special Education Teacher, Plaintiff required reasonable accommodations to perform the essential functions of her position.

27. Starting in 2017, Plaintiff began making requests for reasonable accommodations for her physical impairments.

28. Plaintiff made requests for reasonable accommodations to, among others, Meyers, McCreery, Kroll, DiCarlo and Goldberg.

29. Specifically, among other things, Plaintiff requested a fragrance-free classroom where she is working and bathroom breaks as needed for her IBS.

30. Plaintiff fulfilled her obligations to seek and obtain reasonable accommodations.

31. For example, Plaintiff filled out the appropriate forms; had her treating physicians submit multiple reports, each containing Plaintiff's various diagnoses and the particular physician's recommended accommodations; and gave MHS a signed consent for access to her entire medical team.

32. The accommodations Plaintiff requested were reasonable and would not cause undue hardship to MHS.

33. For example, based on the information available to Plaintiff and upon information and belief, DiCarlo participated in and/or was directly aware that the same or similar accommodations were granted for another employee who had the same or similar physical impairments as Plaintiff.

34. From 2017 through November 2018, Plaintiff's efforts to obtain reasonable accommodations were largely ignored and disregarded.

35. In or around November 2018, Plaintiff was exposed to a fragrance in her classroom. As a result of the exposure, due to her physical impairments, Plaintiff was hospitalized with serious medical conditions.

36. After the exposure and as the result of her medical conditions, Plaintiff could not return to the classroom without reasonable accommodations.

37. Plaintiff informed her supervisors at MHS, including Meyers, McCreery, Kroll, DiCarlo and Goldberg that she required reasonable accommodations in order to return to the classroom.

38. Specifically, among other things, Plaintiff requested: (a) a fragrance-free classroom and/or area for which she is working; (b) bathroom breaks as needed for her IBS; (c) transfer to a case manager position to minimize contact with students who tend to wear fragrances despite being directed not to do so in Plaintiff's classroom; (d) an exit plan due to exposure and medical necessity; and (e) a plan of action to educate others about the need for a fragrance-free environment and enforce intentional violations of the fragrance-free environment.

39. DiCarlo informed Plaintiff her request for reasonable accommodation was denied. As a result, Plaintiff was forced to take a protected leave of absence under the Family Medical Leave Act (FMLA).

40. As Plaintiff's FMLA leave was set to expire, Plaintiff contacted her MHS supervisors, including Meyers, McCreery, Kroll, DiCarlo and Goldberg about her need for reasonable accommodations in order to return to the classroom.

41. McCreery set up a meeting with Plaintiff for January 17, 2019.

42. The day before the meeting, on January 16, 2019, MHS posted an opening for a position to replace Plaintiff as a Special Education Teacher.

43. On or about January 17, 2019, Plaintiff met with her supervisors including McCreery and DiCarlo, about her request for accommodations.

44. During the meeting, McCreery and DiCarlo did not even attempt to discuss Plaintiff's proposed accommodations. Plaintiff did all the talking recapitulating all of her prior efforts to obtain reasonable accommodations, stating what her impairments were and what reasonable accommodations she was requesting per her medical teams' recommendations. There was no dialogue.

45. McCreery stated he would to confer with Kroll, DiCarlo and Goldberg regarding Plaintiff's request for accommodations.

46. On or about January 22, 2019, McCreery informed Plaintiff that her request for reasonable accommodations was denied. A copy of McCreery's e-mail denying Plaintiff's request for accommodations is attached as Ex. 4.

47. Based on the nature of her physical impairments and MHS's refusal to provide the reasonable accommodations Plaintiff requested, the denial of Plaintiff's request for reasonable accommodations forced Plaintiff to take unpaid leave.

48. On or about February 4, 2019, MHS hired multiple full-time special and general education teachers to fill and/or replace Plaintiff's position.

49. MHS did not have legitimate non-discriminatory reasons for denying Plaintiff's requests for reasonable accommodations.

50. For example, on January 16, 2019, MHS posted an opening for a special education teacher position to replace Plaintiff before meeting with her about her request for accommodations.

51. As another example, McCreery stated that Plaintiff could not perform the essential functions of her job.

52. However, based on the information available to Plaintiff and upon information and belief, MHS employed another teacher with the same or similar physical impairments who requested, and who DiCarlo provided, the same or substantially similar accommodations Plaintiff was requesting.

53. As another example, in denying Plaintiff's request for accommodations, McCreery stated MHS did not have any vacant case manager positions available for Plaintiff to fill.

54. However, based on the information available to Plaintiff and upon information and belief, MHS did have vacant case manager positions available.

7

55. As another example, at the time Plaintiff's request for accommodations were denied, Meyers, McCreery, Kroll, DiCarlo and Goldberg specifically, knew and should have known that Plaintiff had been reporting to MHS and government agencies that black mold was present at MHS which threatened the health and safety of people who were exposed to it.

56. More specifically, in 2017 and prior to first requesting reasonable accommodations, Plaintiff discovered that black mold existed in various locations at MHS including in the ventilation system, A Wing, B Wing, D Wing, Bathrooms, Art Rooms, PE locker rooms, ceiling tiles and floor.

57. Plaintiff reported black mold directly to her supervisors at MHS including Meyers, McCreery, Kroll, DiCarlo and Goldberg.

58. Plaintiff also reported black mold to various government agencies.

59. For example, in November, 2017, Plaintiff reported the black mold to Illinois Occupational Safety and Health Administration (OSHA-Illinois) and the Illinois Environmental Protection Agency (EPA-Illinois). In December, 2017, Plaintiff reported the black mold to the Lake County Department of Health (Lake County-DOH).

60. MHS officials, including Meyers, McCreery, Kroll, DiCarlo and Goldberg knew and should have known that Plaintiff reported the black mold to OSHA-Illinois, EPA-Illinois and/or Lake County-DOH.

61. For example, Plaintiff informed her supervisors, including Meyers, McCreery, Kroll, DiCarlo and Goldberg that she reported the black mold to OSHA-Illinois, EPA-Illinois and/or Lake County-DOH. Plaintiff informed her supervisors, among other ways, by communicating the information directly to them and identifying her reports to government agencies in written grievances she filed regarding her working conditions.

62. Further, based on the information available to Plaintiff and upon information and belief, OSHA-Illinois, EPA-Illinois and/or Lake County-DOH contacted MHS regarding Plaintiff's reports.

63. Since Plaintiff began reporting the black mold, and continuing to the present day, Meyers, McCreery, Kroll, DiCarlo and Goldberg have repeatedly and on a regular basis retaliated against Plaintiff for her reports.

64. For example, since 2017, without legitimate cause or justification, Meyers, McCreery, Kroll, DiCarlo and Goldberg have threatened Plaintiff's job, disciplined her under false pretenses, gave her worse work assignments and unfairly criticized her work, among other things.

65. Based on the information available to Plaintiff and upon information and belief, other MHS employees who questioned or reported the black mold also suffered the or similar type of retaliation.

66. Based on the information available to Plaintiff and upon information and belief, MHS's practice of retaliating against employees who report black mold is well-known among the school's teachers and staff.

67. For the reasons stated in ¶¶ 50-66, among other reasons, MHS generally and McCreery, Kroll, DiCarlo and Goldberg specifically did not honestly believe the reasons given for denying Plaintiff's requests for reasonable accommodations.

68. For the reasons stated in ¶¶ 50-66, among other reasons, MHS generally and McCreery, Kroll, DiCarlo and Goldberg tried to force Plaintiff to leave MHS by denying Plaintiff's requests for reasonable accommodations.

69. Plaintiff retained a lawyer and incurred costs and expenses, to contest and dispute the denial of her requests for reasonable accommodations.

70. On or about February 4, 2019, Plaintiff's lawyer contacted MHS about the denial of Plaintiff's request for reasonable accommodations.

71. On or about April 8, 2019, McCreery finally signed an accommodation plan and finally agreed to grant Plaintiff the reasonable accommodations she requested to allow her to return to work. A copy of Plaintiff's accommodation plan is attached as Ex. 5.

72. Between January 2019 and April 2019, while Plaintiff's requests for reasonable accommodations were denied and she was unable to return to work, Plaintiff was unpaid and she was forced to use 44 days of earned sick time.

73. McCreery refused and/or caused MHS to refuse to compensate Plaintiff for her use of 44 sick days.

## COUNT I
## Violation of the ADA
## (MHS)

74. Plaintiff adopts and incorporates by reference the Paragraphs above.

75. Under the ADA, it is a civil rights violation for employers to fail to provide reasonable accommodations for employees with disabilities or discriminate on the basis of disability in all bases of employment, including discipline.

76. At all relevant times, Plaintiff was an "employee" under the ADA.

77. At all relevant times, MHS was an "employer" under the ADA.

78. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the ADA.

79. At all relevant times, Plaintiff had one or more physical and/or mental impairments within the meaning of the ADA that substantially limited one or more of her major life activities including, but not limited to, concentrating, thinking, communicating, breathing and working.

80. At all relevant times, MHS has been aware that Plaintiff suffers from a disability under the ADA.

81. At all relevant times, MHS regarded Plaintiff as having one or more physical and/or mental impairments within the meaning of the ADA that substantially limited one or more of her major life activities.

82. At all relevant times, Plaintiff was qualified to perform the essential functions of her job within the meaning of the ADA.

83. At all relevant times, Plaintiff requested reasonable accommodations that would not cause undue hardship within the meaning of the ADA.

84. In violation of the ADA, MHS committed one or more of the following acts:

    a. Discriminated against Plaintiff based on her disability

    b. Refused to make reasonable accommodations for Plaintiff;

    c. Failed to engage in any or a timely, good faith and meaningful exchange to determine an effective reasonable accommodation;

    d. Failed to make reasonable or any response to a request for an accommodation by Plaintiff;

    e. Disciplined and harassed Plaintiff on the basis of her disability;

    f. Disciplined and harassed Plaintiff in retaliation for making an accommodation request; and/or

    g. Was otherwise in violation of the ADA.

85. MHS discriminated against Plaintiff and retaliated against her in an effort to replace her and/or force her to leave her position.

86. As a result of MHS's discriminatory and retaliatory conduct, Plaintiff has sustained the following and ongoing damages:

    a. Loss of wages, benefits and income including 44 sick days;

    b. Humiliation, embarrassment, and emotional distress damages;

    c. Costs and attorneys' fees incurred to obtain reasonable accommodations and for the prosecution of this action;

12

    d.    Prejudgment interest;

    e.    Other losses to be determined.

WHEREFORE, plaintiff Michelle Peters respectfully requests the Court enter judgment in her favor and against defendant Mundelein Consolidated High School District No. 120 and entry of judgment as follows:

    A.    A finding be entered that MHS intentionally violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.;

    B.    Making the Plaintiff whole to the extent available under law;

    C.    Actual and compensatory damages to the extent available under law;

    D.    For attorney's fees and costs of this suit, including expert witness fees;

    E.    For pre-judgment interest in an amount to be determined at the time of trial; and

    F.    For such other relief as is just and equitable.

## COUNT II
## Violation of the Federal Wire and Electronic Communications Interception Statute 18 U.S.C. § 2511 and 18 U.S.C. § 2520
## (Defendants McCreery, Davis and Inman)

87.    Plaintiff adopts and incorporates by reference the Paragraphs above.

88.    During the relevant time period, it was an established violation of the Federal Wire and Electronic Communications Interception Statute (18 U.S.C. §§ 2511 & 2520) to intercept a communication occurring over Zoom.

89. The Omnibus Crime Control and Safe Streets Act (Title III) establishes a right to civil damages and other relief against "any employee, or agent of the United States or any State or political subdivision thereof, and any individual" "who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. §§ 2510(6), 2511(1)(a) (amended 1986) & 2520.

90. On January 14, 2021, McCreery provided issued to Plaintiff a formal written reprimand based on her communications during the Zoom class.

91. MHS did not have legitimate non-discriminatory reasons to discipline Plaintiff.

92. MHS did not honestly believe the reasons given for Plaintiff's discipline.

93. Plaintiff discovered that McCreery obtained the basis for the alleged discipline by causing and directing defendants Davis and Inman to intrude upon the classroom and intercept Plaintiff's communications occurring over Zoom on December 15, 2020.

94. MHS policies prohibit employees from eavesdropping on Zoom classes.

95. Prior to December 15, 2020, defendant McCreery personally informed MHS employees and students in writing and/or verbally that eavesdropping on Zoom classes was strictly prohibited.

96. For example, McCreery informed Plaintiff and her union representative, Dean Petros, in writing on or about January 5, 2021 that no eavesdropping or using devices to overhear or listen in on Zoom classes was to occur per his email.

97. Davis and Inman knowingly used a computer to access the Zoom class and contemporaneously intercept Plaintiff's communications.

98. Davis and Inman intercepted and acquired Plaintiff's communication as it occurred and contemporaneous with its transmission.

99. On information and belief, McCreery and others procured Davis and Inman to intercept Plaintiff's Zoom class.

100. McCreery, Davis and Inman intercepted communications involving Plaintiff.

101. McCreery, Davis and Inman did not have the consent or authorization of Plaintiff or any other party to such communications, to intercept the aforementioned communications.

102. MHS is liable for the conduct as described herein as an indemnitor and under the doctrine of *respondeat superior* because the McCreery, Davis and Inman are Defendants' officers and employees engaged in such conduct in the course of their employment and within the scope of their employment.

15

WHEREFORE, Plaintiff respectfully requests that judgment be entered in her favor and against defendants, and award any equitable and declaratory relief permitted under the law which may include actual and compensatory damages, statutory damages, attorneys' fees and costs.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON APPLICABLE CLAIMS**

Respectfully submitted,

/s/ Jeffrey R. Kulwin

Jeffrey R. Kulwin
KULWIN, MASCIOPINTO & KULWIN, L.L.P.
161 N. Clark, Suite 2500
Chicago, IL 60601
(t) 312-641-0300
(e) jkulwin@kmklawllp.com

CERTIFICATE OF SERVICE

I, Jeffrey R. Kulwin, an attorney, hereby certify that the attached pleading was served upon all counsel of record via ECF filing on April 7, 2022.

/s/ Jeffrey R. Kulwin